**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SPRINGFIELD JEWISH COMMUNITY CENTER, INC.**<br>                **Plaintiff**<br>     **v.**<br><br>**THERMON GROUP HOLDINGS, INC.;**<br>**THERMON CANADA INC.;**<br>**DOE CORPORATION NO. 1; SAUNACORE;**<br>**SAUNACORE INTERNATIONAL, INC.;**<br>**DOE CORPORATION NO. 2; STEAM**<br>**SAUNA, INC.; and**<br>**DOE CORPORATION NO. 3**<br>                **Defendants** | **CIVIL ACTION**<br><br>**NO.**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Springfield Jewish Community Center, Inc., by and through its undersigned attorneys, submits this Complaint and Jury Demand against Defendants, Thermon Group Holdings, Inc., Thermon Canada Inc., Doe Corporation No. 1, Saunacore, Saunacore International, Inc., Doe Corporation No. 2, Steam Sauna, Inc., and Doe Corporation No. 3, and in support thereof avers as follows:

## PARTIES

1.     Plaintiff, Springfield Jewish Community Center, Inc. ("Plaintiff" or "SJCC") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 1160 Dickinson Street, Springfield, MA 01108 (the "subject property").

2.     At all times relevant hereto, defendant Thermon Group Holdings, Inc. ("Thermon"), upon information and belief, was and is a corporation organized and existing under

the laws of the State of Delaware with its principal place of business located at 7171 Southwest Parkway, Building 300, Suite 200, Austin, TX 78735.

3.      At all times relevant hereto, Thermon was in the business of, *inter alia*, designing, manufacturing, testing inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce heating elements, such as the heating element, UL Code KSOT2.E106810, at issue in this case (the "subject heating element").

4.      At all times relevant hereto, defendant Thermon Canada Inc. ("Thermon Canada"), upon information and belief, was and is a corporation or analogous business entity organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business located at 2721 Plymouth Drive, Oakville, ON  L6H 5R5 Canada.

5.      At all times relevant hereto, Thermon Canada was in the business of, *inter alia*, designing, manufacturing, testing inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce heating elements, such as the heating element, UL Code KSOT2.E106810, at issue in this case (the "subject heating element").

6.      At all times relevant hereto, defendant Doe Corporation No. 1 ("Doe 1"), a corporation or other business entity, was in the business of, *inter alia*, designing, manufacturing, testing inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce heating elements, such as the heating element, UL Code KSOT2.E106810, at issue in this case (the "subject heating element").  Despite a reasonable search conducted with due diligence, Plaintiff is ignorant of the true name of Doe 1 and therefore sues this defendant by fictitious name.  Upon information and belief, Doe 1 is not a citizen of the Commonwealth of Massachusetts.

7.      At all times relevant hereto, defendant Saunacore ("Saunacore"), upon information and belief, was and is a corporation or analogous business entity organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business located at 8841 George Bolton Parkway, Bolton, ON  L7E2X8, Canada.  Upon information and belief, Saunacore also maintains a presence in the United States at 3909 Witmer Road, PMB149, Niagara Falls, NY 14305.

8.      At all times relevant hereto, Saunacore was in the business of, *inter alia*, designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce saunas, such as the sauna, Model #KW9SE/Serial #1803053, at issue in this case (the "subject sauna").

9.      At all times relevant hereto, defendant Saunacore International, Inc. ("Saunacore International"), upon information and belief, was and is a corporation or analogous business entity organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business located at 8841 George Bolton Parkway, Bolton, ON  L7E2X8, Canada. Upon information and belief, Saunacore International also maintains a presence in the United States at 3909 Witmer Road, PMB149, Niagara Falls, NY 14305.

10.      At all times relevant hereto, Saunacore International was in the business of, *inter alia*, designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce saunas, such as the sauna, Model #KW9SE/Serial #1803053, at issue in this case (the "subject sauna").

11.      At all times relevant hereto, defendant Doe Corporation No. 2 ("Doe 2"), a corporation or other business entity, was in the business of, *inter alia*, designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or

distributing into the stream of commerce saunas, such as the sauna, Model #KW9SE/Serial #1803053, at issue in this case (the "subject sauna"). Despite a reasonable search conducted with due diligence, Plaintiff is ignorant of the true name of Doe 2 and therefore sues this defendant by fictitious name. Upon information and belief, Doe 2 is not a citizen of the Commonwealth of Massachusetts.

12.    At all times relevant hereto, defendant Steam Sauna, Inc. ("Steam Sauna"), upon information and belief, was a corporation organized and existing under the laws of the State of New York with its principal place of business located at 210 South 8th Street, Lewiston, NY 14092.

13.    At all times relevant hereto, Steam Sauna was in the business of, *inter alia*, selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering saunas and heating elements, including the subject sauna and the subject heating element, which were sold by Steam Sauna prior to the fire at issue in this case.

14.    At all times relevant hereto, defendant Doe Corporation No. 3 ("Doe 3" and, collectively with Thermon, Thermon Canada, Doe 1, Saunacore, Saunacore International, Doe 2, and Steam Sauna, "Defendants"), a corporation or other business entity, was in the business of, *inter alia*, selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering saunas and heating elements, including the subject sauna and the subject heating element, which were sold by Doe 3 prior to the fire at issue in this case. Despite a reasonable search conducted with due diligence, Plaintiff is ignorant of the true name of Doe 3 and therefore sues this defendant by fictitious name. Upon information and belief, Doe 3 is not a citizen of the Commonwealth of Massachusetts.

## JURISDICTION

15.     Jurisdiction is based on 28 U.S.C. § 1332(a)(1) and (2) as this action involves a controversy between citizens of different states and a citizen or subject of a foreign state. Moreover, the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

16.     Venue is proper in this district based on 28 U.S.C. § 1391(b)(2) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

17.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

18.     Prior to November 18, 2022, Thermon, Thermon Canada, and/or Doe 1 designed, manufactured, tested inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce the subject heating element.

19.     Prior to November 18, 2022, Saunacore, Saunacore International, and/or Doe 2 designed, manufactured, tested inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce the subject sauna.

20.     Prior to November 18, 2022, Steam Sauna and/or Doe 3 sold the subject sauna, which included the subject heating element, to SJCC.

21.     On or about February 18, 2022, a catastrophic fire erupted at the subject property as a direct result of a catastrophic failure of the subject heating element inside the subject sauna.

22.     Specifically, the subject heating element faulted to the outer sheath due to localized overheating.  The subject heating element was designed and/or manufactured in a way that allowed for inconsistencies within the element that allowed for inconsistent heating along the length of the element that directly led to the overheating.

23.     As a direct and proximate result of the acts and/or omissions of Defendants (as are described more fully below), Plaintiff sustained damage to its real property, as well as additional expenses and harms besides, in an amount in excess of $75,000.00.

## COUNT I – NEGLIGENCE v. THERMON

24.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

25.     Thermon owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element and breached said duty.

26.     Thermon knew, and intended, that the subject heating element would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

27.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Thermon, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

      a.      carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free heating element, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

      b.      carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element free from defects;

      c.      carelessly and negligently failing to properly determine that the subject heating element was not in a safe condition, and free of all material defects;

      d.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when it knew, or should have known, that the product was unsafe and unfit for its intended use;

      e.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when Thermon knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

      f.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

      g.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective heating element that Thermon knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

      h.     carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element prior to introducing the product into the stream of commerce; and/or

      i.     carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject heating element, which rendered it defective and unreasonably dangerous.

28.    As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – BREACH OF WARRANTIES v. THERMON

29.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

30.     In light of the defects alleged in the preceding counts, Thermon did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

31.     The subject heating element was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

32.     Furthermore, based upon the fact that that the subject heating element was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Thermon breached the aforementioned warranties.

33.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

34.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – NEGLIGENCE v. THERMON CANADA

35.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

36.     Thermon Canada owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element and breached said duty.

37.     Thermon Canada knew, and intended, that the subject heating element would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

38.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Thermon Canada, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

      a.    carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free heating element, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

      b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element free from defects;

      c.    carelessly and negligently failing to properly determine that the subject heating element was not in a safe condition, and free of all material defects;

      d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when it knew, or should have known, that the product was unsafe and unfit for its intended use;

> e.   carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when Thermon Canada knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;
>
> f.   carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;
>
> g.   carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective heating element that Thermon Canada knew, or reasonably should have known, exposed users to an unreasonable risk of harm;
>
> h.   carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element prior to introducing the product into the stream of commerce; and/or
>
> i.   carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject heating element, which rendered it defective and unreasonably dangerous.

39.   As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IV – BREACH OF WARRANTIES v. THERMON CANADA

40.   Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

41.     In light of the defects alleged in the preceding counts, Thermon Canada did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

42.     The subject heating element was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

43.     Furthermore, based upon the fact that that the subject heating element was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Thermon Canada breached the aforementioned warranties.

44.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

45.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT V – NEGLIGENCE v. DOE 1

46.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

11

47.     Doe 1 owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element and breached said duty.

48.     Doe 1 knew, and intended, that the subject heating element would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

49.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Doe 1, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

   a.     carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free heating element, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b.     carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element free from defects;

   c.     carelessly and negligently failing to properly determine that the subject heating element was not in a safe condition, and free of all material defects;

   d.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when it knew, or should have known, that the product was unsafe and unfit for its intended use;

   e.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element when Doe 1 knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

    f.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject heating element that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

    g.     carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective heating element that Doe 1 knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

    h.     carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject heating element prior to introducing the product into the stream of commerce; and/or

    i.     carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject heating element, which rendered it defective and unreasonably dangerous.

50.     As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VI – BREACH OF WARRANTIES v. DOE 1

51.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

52.     In light of the defects alleged in the preceding counts, Doe 1 did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

53.     The subject heating element was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

54.     Furthermore, based upon the fact that that the subject heating element was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Doe 1 breached the aforementioned warranties.

55.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

56.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## <u>COUNT VII – NEGLIGENCE v. SAUNACORE</u>

57.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

58.     Saunacore owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna and breached said duty.

59.    Saunacore knew, and intended, that the subject sauna would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

60.    The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Saunacore, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

a.    carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free sauna, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna free from defects;

c.    carelessly and negligently failing to properly determine that the subject sauna was not in a safe condition, and free of all material defects;

d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when it knew, or should have known, that the product was unsafe and unfit for its intended use;

e.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when Saunacore knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

f.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

g.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or

distributing into the stream of commerce a dangerous and defective sauna that Saunacore knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

h.  carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, test, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna prior to introducing the product into the stream of commerce; and/or

i.  carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject sauna, which rendered it defective and unreasonably dangerous.

61.  As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VIII – BREACH OF WARRANTIES v. SAUNACORE

62.  Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

63.  In light of the defects alleged in the preceding counts, Saunacore did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

64.  The subject sauna was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

65.     Furthermore, based upon the fact that that the subject sauna was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Saunacore breached the aforementioned warranties.

66.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

67.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## <u>COUNT IX – NEGLIGENCE v. SAUNACORE INTERNATIONAL</u>

68.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

69.     Saunacore International owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna and breached said duty.

70.     Saunacore International knew, and intended, that the subject sauna would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

71.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Saunacore International, by and through its

employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

    a.    carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free sauna, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna free from defects;

    c.    carelessly and negligently failing to properly determine that the subject sauna was not in a safe condition, and free of all material defects;

    d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when it knew, or should have known, that the product was unsafe and unfit for its intended use;

    e.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when Saunacore International knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

    f.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

    g.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective sauna that Saunacore International knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

    h.    carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna prior to introducing the product into the stream of commerce; and/or

i.   carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject sauna, which rendered it defective and unreasonably dangerous.

72.     As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## <u>COUNT X – BREACH OF WARRANTIES v. SAUNACORE INTERNATIONAL</u>

73.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

74.     In light of the defects alleged in the preceding counts, Saunacore International did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

75.     The subject sauna was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

76.     Furthermore, based upon the fact that that the subject sauna was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Saunacore International breached the aforementioned warranties.

77.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

78.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XI – NEGLIGENCE v. DOE 2

79.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

80.     Doe 2 owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna and breached said duty.

81.     Doe 2 knew, and intended, that the subject sauna would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

82.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Doe 2, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

        a.     carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free sauna, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna free from defects;

c.    carelessly and negligently failing to properly determine that the subject sauna was not in a safe condition, and free of all material defects;

d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when it knew, or should have known, that the product was unsafe and unfit for its intended use;

e.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna when Doe 2 knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

f.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject sauna that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

g.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective sauna that Doe 2 knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

h.    carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject sauna prior to introducing the product into the stream of commerce; and/or

i.    carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject sauna, which rendered it defective and unreasonably dangerous.

83.    As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XII – BREACH OF WARRANTIES v. DOE 2

84.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

85.     In light of the defects alleged in the preceding counts, Doe 2 did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

86.     The subject sauna was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

87.     Furthermore, based upon the fact that that the subject sauna was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Doe 2 breached the aforementioned warranties.

88.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

89.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XIII – NEGLIGENCE v. STEAM SAUNA

90.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

91.    Steam Sauna owed a duty of reasonable care to purchasers and users and the like with regard to the selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element and breached said duty.

92.    Steam Sauna knew, and intended, that the subject sauna and subject heating element would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which they would be utilized.

93.    The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Steam Sauna, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

   a.    carelessly and negligently failing to sell, distribute, market, install, assemble, service, repair and/or deliver a properly functioning and defect-free sauna and heating element, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b.    carelessly and negligently failing to properly sell, distribute, market, install, assemble, service, repair and/or deliver the subject sauna and subject heating element free from defects;

   c.    carelessly and negligently failing to properly determine that the subject sauna and subject heating element were not in a safe condition, and free of all material defects;

d.   carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element when it knew, or should have known, that the products were unsafe and unfit for their intended use;

e.   carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element when Steam Sauna knew, or should have known, that the products would be inadequate for the reasons for which they were purchased;

f.   carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element that had unreasonably dangerous electrical components that caused the products to catastrophically fail and/or malfunction;

g.   carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering a dangerous and defective sauna and heating element that Steam Sauna knew, or reasonably should have known, exposed users to an unreasonable risk of harm; and/or

h.   carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject sauna and subject heating element, which rendered them defective and unreasonably dangerous.

94.    As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XIV – BREACH OF WARRANTIES v. STEAM SAUNA

95.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

96.    In light of the defects alleged in the preceding counts, Steam Sauna did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which

it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

97.     The subject sauna and subject heating element were used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

98.     Furthermore, based upon the fact that that the subject sauna and subject heating element were not free of defects, were not of merchantable quality, and were not fit for the purposes for which intended, Steam Sauna breached the aforementioned warranties.

99.     Plaintiff has performed all conditions precedent to recover based upon such breaches.

100.     As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## <u>COUNT XV – NEGLIGENCE v. DOE 3</u>

101.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

102.     Doe 3 owed a duty of reasonable care to purchasers and users and the like with regard to the selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element and breached said duty.

103.    Doe 3 knew, and intended, that the subject sauna and subject heating element would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which they would be utilized.

104.    The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Doe 3, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

    a.    carelessly and negligently failing to sell, distribute, market, install, assemble, service, repair and/or deliver a properly functioning and defect-free sauna and heating element, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b.    carelessly and negligently failing to properly sell, distribute, market, install, assemble, service, repair and/or deliver the subject sauna and subject heating element free from defects;

    c.    carelessly and negligently failing to properly determine that the subject sauna and subject heating element were not in a safe condition, and free of all material defects;

    d.    carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element when it knew, or should have known, that the products were unsafe and unfit for their intended use;

    e.    carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element when Doe 3 knew, or should have known, that the products would be inadequate for the reasons for which they were purchased;

    f.    carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering the subject sauna and subject heating element that had unreasonably dangerous electrical components that caused the products to catastrophically fail and/or malfunction;

    g.    carelessly and negligently selling, distributing, marketing, installing, assembling, servicing, repairing and/or delivering a dangerous and

defective sauna and heating element that Doe 3 knew, or reasonably should have known, exposed users to an unreasonable risk of harm; and/or

h.    carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject sauna and subject heating element, which rendered them defective and unreasonably dangerous.

105.    As a direct and proximate result of such conduct, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XVI – BREACH OF WARRANTIES v. DOE 3

106.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

107.    In light of the defects alleged in the preceding counts, Doe 3 did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

108.    The subject sauna and subject heating element were used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon them in order to recover on this count.

109.    Furthermore, based upon the fact that that the subject sauna and subject heating element were not free of defects, were not of merchantable quality, and were not fit for the purposes for which intended, Doe 3 breached the aforementioned warranties.

110.    Plaintiff has performed all conditions precedent to recover based upon such breaches.

111.    As a result of the damages directly and proximately caused by said breach(es) of Defendant, Plaintiff sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
**Plaintiff**
**Springfield Jewish**
**Community Center, Inc.**
By its attorneys,

*/s/ Jason E. Cohn*

_____
Jason E. Cohn, Esquire
BBO. #638259
Cohn Rios & Wholley
2 Center Plaza, 8th Floor
Boston, MA 02108
Phone: 617-723-1720
Fax: 617-557-5677
Email: jec@cohnrioswholley.com

*/s/ Brendan L. Labbe*

_____
Brendan L. Labbe, Esquire
BBO #697274
Sloane and Walsh, LLP
201 Washington Street, Suite 1600
Boston, MA 02108
Phone: 857- 321-7090
Fax: 617-227-0924
Email: blabbe@sloanewalsh.com

Dated: November 14, 2025